## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **RONALD DAVID MADISON,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 4:15-cv-222** |
| | § | |
| **CBRE, INC.,** | § | |
| **Defendant.** | § | |

## COMPLAINT

**TO THE HONORABLE JUDGE OF SAID COURT:**

**COMES NOW**, Ronald David Madison, Plaintiff, and files this original complaint against

CBRE, Inc., Defendant, and would respectfully show the Court as follows:

### I.  PARTIES

1.      Plaintiff is an individual residing in Grayson County, Texas.

2.      Defendant CBRE, Inc. is a foreign for-profit business doing business in Texas and may be

served by serving its registered agent CT Corporation System, 1999 Bryan St., Suite 900, Dallas,

Texas 75201-3136.

### II. JURISDICTION

3.      Jurisdiction is founded on federal question, specifically, 42 U.S.C.A.  § 2000e, *et seq*.

(Unlawful Employment Practices), as amended.

4.      All prerequisites to filing suit have been met.

## III. FACTS

5.      Plaintiff was employed by Defendant CBRE, Inc. for approximately two (2) years.  CBRE is the facilities management contractor for Baylor Medical Center at McKinney located in McKinney, Texas.

6.      Plaintiff began working as a building engineer for CBRE at Baylor McKinney when it opened in July 2012.  On or about July 21, 2014, he was discharged.

7.      During his employment, Plaintiff received three "Five Star" awards from Baylor McKinney. The "Five Star" is an award in recognition of outstanding performance.  Plaintiff received more "Five Star" awards than any other building engineer.

8.      Plaintiff never received any warnings or written discipline during his tenure with CBRE.

9.      On or about June 27, 2014, Plaintiff went to get the leaf blower to blow off the entryways. He found the blower missing from the cabinet.  He reported the missing blower to David Rose, Lead Engineer.  Plaintiff told him they needed to watch vendors and others because there were so many people in and out of the plant.

10.     This was not the first item to go missing.  Over Thanksgiving in November 2013, Plaintiff reported the volt meter was missing after a vendor used it.  When Plaintiff reported it to Mr. Rose, he told Plaintiff to keep an eye out as there were other things missing.

11.     On or about July 14, 2014, Allison Simpson, from human resources, and Doug Reynolds, Director of Facilities and Maintenance, called Plaintiff into the office and asked if he knew anything about the missing blower.  They asked if Plaintiff knew who would do it.  Plaintiff told them he did not think it would be any of their employees but there were a lot of vendors and 40-50 construction workers moving through the area.  Ms. Simpson asked if there was anything else missing Plaintiff

knew about and he told her she had not mentioned the volt meter.  Mr. Reynolds indicated he knew about the missing volt meter.

12.     On July 16, 2014, Ms. Simpson told Plaintiff he was being put on paid leave while they continued their investigation and watched films.  At no time was Plaintiff asked to make a statement.

13.     On July 21, 2014, Ms. Simpson telephoned Plaintiff and told him the investigation was wrapped up and they had decided to terminate his employment.  When Plaintiff asked why, she told him it was because of "discrepancies" between the information he gave and that given by "other people" interviewed regarding the missing equipment.

14.     Plaintiff asked Ms. Simpson if they found the thief and she said no.

15.     Plaintiff never stole anything or participated in any theft.  Plaintiff was truthful to his employer about the missing equipment.

16.     CBRE presented no evidence that Plaintiff was involved in any alleged theft of property.

17.     Plaintiff was given no progressive discipline.  However, other CBRE employees working at the Baylor McKinney location violated company policy and were not discharged.

18.     One example is Armondo Coleman, also employed as a building engineer.  Mr. Coleman (an African-American) works the night shift.

19.     During one of Mr. Coleman's shifts, the entire water supply from the cooling system leaked out.  This was an area Mr. Coleman was specifically required to check during his inspection rounds. This problem could not have been missed had Mr. Coleman actually been making his inspections. He was not fired for this incident and received no written discipline.

20.     Plaintiff contends Defendant discriminated against him.

21.     At the time of his discharge, Plaintiff was earning approximately $18.492354 per hour plus

shift differential, overtime, benefits and bonuses.

## IV. FEDERAL CLAIMS FOR RELIEF AND DAMAGES

## COUNT I

## Violations of 42 U.S.C.A. § 2000e, *et seq.* (Unlawful Employment Practices), as amended

22.      A.      Plaintiff alleges that he was discharged in violation of violation of 42 U.S.C.A. §2000e, *et seq.* (Unlawful Employment Practices), as amended, protecting Plaintiff from discrimination in the workplace based on his race (white).

23.      B.      Plaintiff claims all relief, legal and equitable, that effectuate his rights under 42 U.S.C.A. § 2000e, *et seq.* (Unlawful Employment Practices), as amended.

24.      C.      Plaintiff requests reasonable attorney's fees as permitted under 42 U.S.C.A. § 2000e, e*t seq.* (Unlawful Employment Practices), as amended.

25.      D.      On or about September 16, 2014, Plaintiff filed a written complaint with the U.S. Equal Employment Opportunity Commission. On January 8, 2015, he received the Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission, which was dated January 7, 2015.

## V.  DAMAGES

26.      Plaintiff would show that he has sustained damages within the jurisdictional limits of the Court as a proximate cause of Defendant's wrongful conduct.  Plaintiff claims all relief at law and in equity pursuant to 42 U.S.C.A. § 2000e, *et seq.* (Unlawful Employment Practices), as amended.

## VI. ATTORNEY'S FEES

27.      Plaintiff would show that, as a result of Defendant's wrongful conduct as set forth herein, he is entitled to reasonable and necessary attorney's fees.

## VII. JURY DEMAND

28.     Plaintiff requests that this matter be tried before a jury.

        **WHEREFORE, PREMISES CONSIDERED**, Plaintiff requests that upon final hearing

hereof, Plaintiff have judgment against Defendant for actual damages including back pay and front

pay in an amount within the jurisdictional limits of the Court together with interest on said amount at

the highest rate allowed by law; liquidated damages; mental anguish; punitive damages; reasonable

attorney's fees; costs of court; prejudgment and postjudgment interest; and any and all further relief,

at law or in equity, general or special, to which Plaintiff may show himself justly entitled.

                                Respectfully submitted,

                                **RONALD R. HUFF**
                                Attorney and Counselor at Law
                                112 South Crockett Street
                                Sherman, Texas 75090
                                (903) 893-1616 (telephone)
                                (903) 813-3265 (facsimile)
                                ronhuff@gcecisp.com


                                 /s/ Ronald R. Huff_____
                                Ronald R. Huff (SBN 10185050)
                                **ATTORNEY FOR PLAINTIFF**